**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JESSYCA FERRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DENTON COUNTY ELECTRIC COOPERATIVE, INC. d/b/a COSERV ELECTRIC,<br><br>Defendant. | **FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No: 4:26-cv-00255<br><br>Hon. Amos L. Mazzant, III |

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**[1]

Plaintiff, Jessyca Ferrell ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Class and Collective Action against Denton County Electric Cooperative, Inc. d/b/a CoServ Electric ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and common law.

2. Defendant is an electric cooperative serving eight counties in North Texas.[2]

---

[1] Plaintiff files this First Amended Class and Collective Action Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).
[2] *See* https://www.coserv.com/about/ (last visited May 11, 2026).

3. To support its customers, Defendant employs customer service representatives.[3]

4. Defendant employed hourly call center employees in the United States at its Customer Service Center in Corinth, Texas, among others. Upon information and belief, Defendant also employed hourly call center employees across the U.S. in hybrid or remote-work positions.

5. Defendant's hourly call center employees had a number of different job titles that included, but were not limited to, Customer Service Representative; Billing Analyst (collectively referred to as Customer Service Representatives, or "CSRs."[4]

6. Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

7. Regardless of the specific job title, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing call center based assistance to Defendant's existing and prospective customers.

8. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and Defendant's CSRs, are homogenous, and it issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call-ready activities.[5] "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

[3] *See* http://bit.ly/4319tgo (last visited May 11, 2026).
[4] *Id.*
[5] DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

9. Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and during their scheduled shifts, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked and in workweeks in which CSRs worked overtime, for straight time.

10. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to the start of their scheduled shifts.

11. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees, and costs, along with all other relief to which they are entitled. Plaintiff further seeks such remedies to make the workers whole for the harm they suffered and to ensure that Defendant does not subject future employees to the same unlawful practices.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

13. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

15. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

16. Defendant's employees engaged in interstate commerce—utilizing, among other things, telephone lines and internet—and therefore, they are also covered by the FLSA on an individual basis.

17. The Court has personal jurisdiction over Defendant because Defendant conducts business within this District and maintains a principal place of business in this District.

18. Venue is proper in in this District pursuant to 28 U.S.C. § 1391 because Defendant is incorporated in the State of Texas and conducts business within this District via its principal place of business.

## **PARTIES**

19. Plaintiff is an adult resident of Rhome, Texas and worked for Defendant as a customer service representative from approximately September 2015 through October 2024.

20. Plaintiff's most recent base hourly rate of pay was $24.87.

21. Plaintiff's consent to join form is at ECF 1-1.

22. Additional putative Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

23. Defendant's headquarters is located at 7701 South Stemmons, Corinth, Texas 76210.

24. Defendant's registered agent is Donnie Clary located at 7701 South Stemmons, Corinth, Texas 76210.

25. Defendant is an "enterprise" through "common operations" and/or "common control

under the FLSA, 29 U.S.C. § 203(r)(1), subjection to the provisions of 29 U.S.C. § 201, *et seq.*

## GENERAL ALLEGATIONS

26. Throughout their employment with Defendant, Plaintiff and the other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

27. Defendant's hundreds of CSRs provided customer service and support to Defendant's customers.

28. Defendant compensated CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

29. Upon information and belief, Defendant maintained documents that demonstrate the promised hourly wage for each CSR, including but not limited to, offer letters, paystubs, and/or other payroll records.

30. Plaintiff and Defendant's CSRs regularly worked five (5) days each week and forty (40) or more hours per week.

31. There were many instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek. For example, while being scheduled to work forty hours per week, Plaintiff would frequently work from 8 a.m. until 8 p.m. on Mondays.

32. Plaintiff and Defendant's CSRs would field incoming calls regarding residential and commercial billing, including using Defendant's website, setting up service, and ending service.

33. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the

beginning of the day; the importance of attendance and schedule expectations; and Defendant's policies.

34. The training that all of Defendant's CSRs received was substantially, if not entirely, the same and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

35. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

36. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

37. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

38. Defendant issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendant's work expectations, specifically "phone ready" requirements.

39. More specifically, Defendant instructed Plaintiff and other similarly situated CSRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required Defendant's CSRs to load and log into their essential work-related computer programs and applications before the start of their shifts and before they were allowed to clock in so they could be prepared to field Defendant's customers' inquiries the moment their shifts began.

40. During the boot-up and login process, Defendant's' CSRs sometimes experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

41. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-shift work off-the-clock.

42. These policies and procedures, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "phone ready" policy and required CSRs to perform off-the-clock work.

43. Pursuant to these policies and procedures, Defendant's CSRs, including Plaintiff, faced warnings, coaching, poor performance evaluations, performance improvement plans ("PIPs"), other disciplinary action, and termination for failing to be "phone ready."

44. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

45. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

46. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

47. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

48. Defendant knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* TX Govt. Code § 659.015 (2025).

49. Defendant also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than forty (40) hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

50. Nevertheless, Defendant failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

51. Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

52. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

53. Defendant was aware that Plaintiff and the CSRs worked more than forty (40) hours in multiple workweeks because Defendant's own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendant issued payment.

**A. <u>Unpaid Pre-Shift Boot-Up and Call Ready Work</u>**

54. Defendant's CSRs were trained and required to start up and log into Defendant's computer network and software programs in order to access the information necessary to perform

their job duties and be considered "phone ready" before "punching into" Defendant's timekeeping system.

55. The pre-shift boot-up and login process was the same whether CSRs worked remotely or in-office and generally consisted of the following steps:

a. Waking up the computer;

b. Logging into Windows with a username and password;

c. Connecting to Defendant's virtual private network ("VPN") using two-factor authentication;

d. Logging into Microsoft Teams;

e. Launching Outlook software (for communicating with customers and sales representatives via email);

f. Launching ADT software (which accounted for Plaintiff's time);

g. Launching NISC software (used for processing Defendant's customers and taking notes regarding the same);

h. Launching Aspect (Defendant's phone system through which CSRs marked themselves "available" to take calls);

i. Launching Defendant's Intranet through a web browser; and

56. The boot-up and login process described above took approximately ten (10) minutes per shift.

57. If CSRs arrived at their computers immediately prior to their scheduled shifts, they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "available" in Aspect when their scheduled shifts began, and Defendant considered them tardy.

58. Defendant expected Plaintiff and all other CSRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation, coupled with

Defendant's attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and "available" at the start of their shifts.

59. Thus, the pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

60. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. <u>Time Rounding</u>**

61. Generally, employers may record employees' starting or stopping times to the nearest five minutes or to the nearest one-tenth or quarter of an hour. 29 C.F.R. § 785.48(b). The regulations provide these rounding practices may be used presuming the arrangement averages out so the employees are fully compensated for all the time they actually work. *Id.*

62. However, an employer's policy of rounding off is permissible only if the rounding occurs so employees are not disadvantaged over time. 29 C.F.R. § 785.48. Rounding off practices that result in significant discrepancies in recordkeeping or in a failure to compensate employees for time actually worked are improper. *Id.*

63. At all relevant times, through the use of a computer software system, Defendant recorded its hourly employees' time clock punches on a daily basis.

64. Throughout their employment with Defendant, Plaintiff and all other CSRs punched in on Defendant's timekeeping software system at the beginning of her shifts and punched out at the end of her shifts.

65. Defendant maintains an unlawful rounding policy which rounds employee punch-

in and punch-out times to the nearest quarter hour in a way that benefited Defendant. As a result, Defendant failed to pay Plaintiff and other CSRs for all time worked.

66. At the end of her shifts, when Plaintiff remained on a call with a client past her scheduled end time to complete the call, she was not compensated for any time worked beyond her shift if she clocked out between one (1) and seven (7) minutes after its conclusion.

67. In each workweek where Plaintiff worked forty (40) hours or more, the rounding policy resulted in an unlawful deprivation of the overtime wages required by the FLSA.

68. In each workweek where Plaintiff worked less than forty (40) hours, the rounding policy also resulted in an unlawful deprivation of straight-time wages (i.e., gap time).

69. Upon information and belief, the unlawful pay practices evidenced in Plaintiff's earnings statements were committed against CSR employees in every workweek.

70. Defendant's time-rounding practices almost invariably inured to its benefit.

71. Defendant's time-rounding practices were intended to systematically underpay all of its hourly CSR employees, and Defendant was unjustly enriched as a result.

72. Defendant's policy and practice of rounding Plaintiff's and its other CSR's punch-in and punch-out times resulted in a substantial amount of uncompensated work over the past three years.

73. Defendant knew or should have known that all of Plaintiff's and all other CSR's hourly work was compensable under the FLSA. Likewise, Defendant knew or should have known that its rounding policies and practices violated the FLSA.

74. As a matter of common business policy, Defendant failed to pay Plaintiff and the putative Collective members for all work performed as set forth in this Amended Complaint. They were not paid their promised hourly wage for all work performed, and they were not paid overtime,

as required by the FLSA, in weeks in which they worked more than forty (40) hours.

75. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

**C. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>**

76. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

77. Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which she was not paid.

78. During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

## <u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

79. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of herself and on behalf of:

> *All current and former hourly Customer Service Representatives, and/or other job titles performing the same or similar job duties (collectively, "CSRs"), who worked for Defendant in the United States at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

80. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and others similarly situated.

81. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked more than forty (40) hours.

82. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

83. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

84. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

85. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

86. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely,

Defendant's practices, policies, or plan of not paying its CSRs for all overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

87. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands of members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records.

88. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

**<u>RULE 23 CLASS ACTION ALLEGATIONS</u>**

89. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly Customer Service Representatives, and/or other job titles performing the same or similar job duties (collectively, "CSRs"), who worked for Defendant in the United States at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition if necessary.

90. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if

not thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

91. There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following: whether Defendant's non-payment of wages for all compensable and non-overtime hours unjustly enriched Defendant.

92. Plaintiff's claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

93. Plaintiff will fully and adequately protect the interests of the Rule 23 Class and she retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

94. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

95. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

relative ease.

96. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

98. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

99. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

100. Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

101. At all times relevant to this action, Plaintiff and the members of the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

102. At all relevant times, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

103. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

104. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods

for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

105. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

106. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq.*

107. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

108. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs. These activities and the time associated with these activities was significant.

109. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

110. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

111. Defendant's violations of the FLSA were knowing and willful.

112. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

**COUNT II**
**(Rule 23 Class Action)**
**BREACH OF CONTRACT**

113. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

114. At all times relevant to this action, Defendant had binding and valid contracts with Plaintiff and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed on behalf of Defendant.

115. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

116. For example, Defendant offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

117. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

118. Upon information and belief, each Rule 23 Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

119. Plaintiff and every other Rule 23 Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

120. By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

121. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Class member.

122. Plaintiff and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

123. Plaintiff and the Rule 23 Class members' remedies under the FLSA are inadequate to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour and failed to compensate them for all hours worked, including (i) straight-time hours in workweeks where fewer than forty (40) hours were worked (i.e., "gap time") and (ii) unpaid straight-time wages for hours worked up to and in excess of forty (40) hours in workweeks where Plaintiff and the Rule 23 Class members worked overtime when considering the off-the-clock work described herein (i.e., "overtime gap time").

124. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

125. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and

the Rule 23 Class members were damaged in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

126. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

127. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

128. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Class member a pre-established hourly rate in consideration of the work duties they performed on behalf of Defendant.

129. Upon information and belief, each Rule 23 Class member, including Plaintiff, was paid a base hourly rate.

130. Plaintiff and every other Rule 23 Class member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out the work they performed.

131. By not paying Plaintiff and every other Rule 23 Class member the promised base hourly wage for all the non-overtime work they performed each shift, Defendant was unjustly enriched.

132. Plaintiff and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

133. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

134. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Class member to finance their various business expenditures.

135. Defendant was unjustly enriched by the retention of monies procured by Plaintiff and the Rule 23 Class for Defendant, without having compensated Plaintiff for the same.

136. Plaintiff and the Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

137. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Class member have suffered damages, including, but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Class; and undersigned counsel as Class counsel for the same;

e. An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; or in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Class to perform;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Class the full amount of damages and liquidated damages available by law;

i. An Order compelling a complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: May 13, 2026

Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
1 Towne Sq., 17th Floor
Southfield, Michigan 48375
(248) 355-0300

*Attorney for Plaintiff and the Proposed Collective*